******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAUREN SCHULL *v.* NEAL SCHULL
(AC 36726)

Keller, Prescott and Mullins, Js.

*Argued October 23, 2015—officially released February 16, 2016*

(Appeal from Superior Court, judicial district of Ansonia-Milford, Hon. Philip E. Mancini, Jr., judge trial referee [dissolution judgment]; Malone, J. [motion for contempt, motion to reargue, motion to open].)

*Stuart Hawkins*, with whom, on the brief, was *Daniel Shepro*, for the appellant (plaintiff).

*Opinion*

MULLINS, J. Pursuant to a prior court order requiring that the parties each pay 50 percent of their son's unreimbursed medical expenses, the plaintiff, Lauren Schull,[1] moved to have the defendant, Neal Schull, held in contempt for failing to pay his share of their son's optical surgery bill. The medical expenses for that surgery, which are the expenses at issue here, allegedly were paid by the plaintiff's father, as a loan to the plaintiff. After a hearing, in which the court concluded that the defendant was not in contempt and that there was insufficient evidence of a loan, the court required the plaintiff to show by a date certain that her father had loaned her the money, that he had not forgiven any portion of that alleged loan, and that she actually was repaying the loan. The court further concluded that only if she complied with the requirement to show that she was obligated to repay the loan and was making payments thereon would the defendant be obligated to pay his share of the medical expenses at a rate of $25 per month, payable to the plaintiff.

The plaintiff appeals from the judgment of the trial court conditionally ordering the defendant to pay a portion of their son's previously paid medical expenses, and denying her motion to open the judgment on the basis of fraud.[2] On appeal, the plaintiff claims that the court improperly (1) added new conditions to the earlier judgment that required each of the parties to pay 50 percent of their son's unreimbursed medical expenses, (2) ordered the defendant to pay only a nominal weekly amount toward those medical expenses, and (3) denied her motion to open the judgment on the basis of fraud.[3]

We conclude that the court did not add new conditions to its earlier judgment, but that it gave the plaintiff additional time to submit proof that there was an arrearage owed for unreimbursed medical expenses, of which she failed to take advantage. Accordingly, we affirm that aspect of the trial court's judgment. Additionally, we conclude that the plaintiff's second and third issues are moot, and, therefore, we dismiss that part of the plaintiff's appeal.[4]

The following facts and procedural history inform our review. The marriage of the parties was dissolved on May 26, 1999. The judgment provided in relevant part that the parties would "divide and pay equally all unreimbursed and uninsured medical . . . expenses of the [two] minor children," a daughter born on July 31, 1991, and a son born on November 1, 1993.[5] On November 14, 2007, the parties entered into an agreement that later was approved by the court, which provided in relevant part that "[a]ll unreimbursed medical expenses shall be split 50/50 between the parties."

The parties' son had been born with vision problems and suffered from a condition called aniridia. The trial

court explained that the son was missing an iris from both of his eyes and that, "as a result of his condition, suffered increased sensitivity to light and had significant limitations with regard to his vision." The parties discussed the possibility of an experimental eye surgery for their son, and the plaintiff told the defendant that such surgery would not be covered by her medical insurance. The defendant voiced concern over the cost of the surgery, but the plaintiff stated that the surgery would occur regardless of whether the defendant paid.

In January and June, 2011, the son underwent surgery on his eyes.[6] The costs of these procedures and the related medical expenses totaled $55,684.91. The plaintiff did not provide documentation to the defendant related to these medical costs, and the defendant did not pay any portion of these costs. The costs were paid in full during 2010 and 2011.

On May 18, 2012, the defendant filed a motion to modify child support on the ground that the parties' son, who was the younger child, was over the age of eighteen and out of high school. The court scheduled the matter for a June 18, 2012 hearing and ordered that the plaintiff be served with a copy of the motion and the order for hearing. The marshal's return states that in hand service was made on the plaintiff on May 29, 2012. The plaintiff neither filed an objection to the defendant's motion, nor informed the court that she believed that there were arrearages in the form of unreimbursed medical expenses.

In the court file, there is a proposed order, dated June 18, 2012, the date of the scheduled hearing, that states that the parties agreed to the "[d]iscontinuance of child support [and] . . . [t]here's no arrearage." The court, without objection, approved the termination of the existing support order on that day.[7]

Nearly one year later, on May 23, 2013, the plaintiff filed a motion for contempt, alleging that the defendant was in violation of the court's order from the dissolution judgment and from the November 14, 2007 agreement of the parties that required him to pay 50 percent of the unreimbursed medical bills for the minor children. The defendant objected to the motion claiming, inter alia, that the expenses were not truly medical expenses, the procedures were experimental and not approved by the United States Food and Drug Administration (FDA), and the procedures took place more than three years before the plaintiff sought payment from him. He further claimed that the plaintiff did not personally pay for the procedures but the expenses were covered through a charitable fund set up on behalf of the minor child, and the plaintiff was acting in bad faith by attempting to force the defendant to pay her for expenses that she never paid personally.[8]

Following a trial, on November 26, 2013, the court

issued its oral judgment on the motion for contempt wherein it concluded that the defendant was not in contempt. The court also concluded that, although the plaintiff had produced medical invoices that totaled $55,684.91, those invoices were paid, and the allegation by the plaintiff that her father had loaned her $53,500 to pay a portion of these invoices was "dubious, at best."[9] The court explained that the plaintiff had made no payment to her father in more than three years, and she had produced no evidence at trial that her father's alleged payment of these invoices was a loan and not a gift to her son.[10]

The court then gave the plaintiff until January 31, 2014, to submit proof that there was a $53,500 loan to her from her father, that she was making payments to her father for that loan, and that she personally had paid the additional $2,184.91 in expenses. The court further ordered the defendant to pay to the plaintiff $25 per month toward his half of the $55,684.91, but only if the plaintiff submitted the required proof by the court imposed deadline. The court also ordered that the plaintiff had an ongoing duty to disclose what amount she was paying to her father and whether any amount had been forgiven either by her father or by his estate upon his passing. The plaintiff filed a motion to reargue, which the court denied.

Thereafter, on December 12, 2013, the plaintiff, seeking additional discovery and testimony, filed a motion to open the judgment on the basis of fraud, alleging that "the [d]efendant . . . provided a materially false financial affidavit to the court, in that he owned 100 percent of [his home] but falsely included in his affidavit only a 50 percent interest in the property . . . [and that] the defendant failed to disclose a $41,900 July 2013 home equity line of credit . . . and did not account for any cash drawn or available against that line." The plaintiff was seeking to establish that the defendant had the ability to pay more than the $25 nominal amount toward the alleged unreimbursed medical bills.

The court did not hold a hearing on the plaintiff's motion to open the judgment until March 27, 2014. In the meantime, however, the record shows that the plaintiff failed to provide the required proof on which the defendant's order to pay was conditioned by the court's deadline of January 31, 2014. Nevertheless, following the hearing on the motion to open the judgment, on March 27, 2014, the court found no probable cause of fraud on the part of the defendant and denied this motion. This appeal followed.

The plaintiff first claims that "the court committed clear error by conditioning the defendant's repayment of medical expenses as no such condition existed in the judgment of dissolution or the subsequent modification." She argues that the court "committed clear error as there was no evidence . . . [that the prior orders

of the court] in any way condition[ed] the defendant's payment of one half of the unreimbursed medical expenses on the plaintiff reimbursing her father . . . ."

We are not persuaded by the plaintiff's claim or her argument. The record demonstrates that the court determined that the plaintiff had failed to prove that there were arrearages in the form of "unreimbursed medical expenses" during the trial on her contempt motion, but, giving her the benefit of the doubt, the court entered a conditional order, which gave the plaintiff until January 31, 2014, to submit "proof" of her claim.

"The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances. . . . We review such questions of law de novo." (Internal quotation marks omitted.) *DeFeo* v. *DeFeo*, 119 Conn. App. 30, 33, 986 A.2d 1099 (2010).

At this juncture, there is no dispute that the parties' agreement, incorporated into the court's dissolution judgment, required each of the parties to pay one half of all unreimbursed medical expenses for the minor children. It is clear from reading the transcript of the trial court's oral decision on the contempt motion, its written order, and its articulation that it did not credit the plaintiff's self-serving allegation that her father had loaned her the money to pay for her son's medical treatment. In particular, the court noted that there was no evidence to support her claim that her father loaned her the money, i.e., no promissory note, no testimony from her father, and no evidence of any payments made on the loan by the plaintiff. Then, more pointedly, the court characterized her allegation that her father had loaned her the money as "dubious, at best."

Nevertheless, rather than issuing an outright denial of her claim for reimbursement, which may have been the better course, the court gave the plaintiff until January 31, 2014, to submit proof that her father had loaned her the money to pay for these expenses and that she had assumed her purported obligation to repay those sums. On the basis of the brief and argument submitted to this court by the plaintiff, we conclude that she has failed to establish that this was error.

The question in this case essentially boils down to whether the expenses for which the plaintiff is seeking "reimbursement" from the defendant, which, without question, fully had been paid in 2010 and 2011, properly could be classified as unreimbursed medical expenses when the plaintiff failed to establish that she, herself, paid any portion of these expenses or that she was obligated to repay whomever or whatever paid the expenses. The first step in answering this question is

to determine what qualifies as an unreimbursed medical expense for which she would be due reimbursement.

The term "unreimbursed medical expenses" is not defined in the 2007 order of the court or in the original judgment of dissolution. Nonetheless, we are not left without guidance regarding the meaning of this phrase. Indeed, the regulations governing the child support guidelines illuminate the meaning of that phrase: "An order shall be made under this subdivision for payment of the child's medical and dental expenses that are not covered by insurance or reimbursed in any other manner. . . ." Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-2b (g) (3). Additionally, the guideline regulations define " 'Health care coverage' " as "any provision of the child support award that addresses the child's medical or dental needs, and includes an order for either parent to . . . (B) pay all or part of such child's medical and dental expenses that are not covered by insurance or reimbursed in any other manner." Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-1 (12).

Thus, in light of the foregoing explanations, to be classified as an unreimbursed medical expense, the medical expense must: (1) not be paid by medical insurance; or (2) not be reimbursed in any other manner. Like the trial court, we are not persuaded that the plaintiff established that the medical expenses, for which she now is seeking "reimbursement" from the defendant, properly could be classified as unreimbursed medical expenses.

During the trial, the defendant testified in relevant part that when the plaintiff told him about the surgical option for their son, he had a lot of concerns. Among them was that the procedure was new to this country, there was no FDA approval, there were side effects, and the cost factor. He testified that he had discussed the costs of these procedures with the plaintiff in 2010, that she had told him that her father was going to pay for the procedures as a gift to his grandson, and that she never indicated to him that her father wanted to be reimbursed for this gift.

The defendant also testified that the plaintiff told him that she was starting a fund called the Nathaniel Fund (fund) to help with the cost of the surgeries, and that he was aware that a newspaper had done an article on the fund. He testified that he, himself, made no payments toward these procedures, and that the plaintiff never told him that she expected him to contribute to the cost of the procedures. He further testified that he had not received any invoices or written communications regarding the expenses of these surgeries prior to receiving a letter from the plaintiff's attorney on or about May 6, 2013, demanding payment, with attached invoices. He also testified that he had not received any explanation of benefits from the plaintiff's health insur-

ance company or any documentation with respect to what coverage, if any, might have been available for these procedures.

The plaintiff testified in relevant part that because the iris transplant surgery was a "noncovered procedure with [her] insurance company," the bills, amounting to $39,000 and $14,000, had to be paid in cash. After initially denying that there was a fundraising or charitable account set up for the parties' son, the plaintiff admitted that the fund had been established on January 20, 2011. She acknowledged that the bank account information for this fund was contained in a January 30, 2011 article in the New Haven Register, but she stated that the money contributed to this fund was not used for medical expenses; rather, it was used for their son's personal expenses.[11] The plaintiff thought that approximately $4000 had been contributed to this account, but she was not "quite sure of the total amount at the end . . . ."

The plaintiff testified that payments for these medical expenses had to be made in cash. When shown the billing statements from the doctor's office, which showed credit card payments of $23,000 and $16,000 being made on June 30, 2010, the plaintiff explained that these payments were not from a credit card, but, instead, were from a "check card" or an "ATM card." She affirmatively acknowledged, however, that the funds used to pay these expenses did not come out of her personal bank account and that she did not personally pay the $39,000. She further conceded that she "did not personally make" the additional payment of $7000 reflected on a December 29, 2010 billing statement also related to the son's medical procedure. The plaintiff also acknowledged that she had no documentation that stated that she had to repay any of the money used to pay for the medical procedures.

Additionally, the plaintiff acknowledged that the defendant had filed a motion to modify child support, seeking a termination of the obligation, in May, 2012, after their son had turned eighteen and had graduated from high school. She admitted that the expenses for these medical procedures already had been paid at that time. She also admitted that she had not sent the defendant any documentation regarding these medical bills before her attorney sent him a letter in May, 2013, and that she had not sought reimbursement in court at any time before the filing of the current motion. When asked whether she had raised an issue with the court regarding these medical bills when she received notice that the defendant was seeking to terminate his child support obligation, she responded: "No, I thought he would do it."

On the basis of this evidence, the trial court determined that the plaintiff's claim that she had to repay the money paid for these alleged "unreimbursed medical expenses" was "dubious, at best."

After thoroughly reviewing the record in this case, we conclude that the plaintiff failed to establish that these medical bills were "unreimbursed medical expenses," as that term is used in the child support guidelines and in the parties' agreement; see Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-1 (12) (B) (unreimbursed medical expenses are those "not covered by insurance or reimbursed in any other manner"); Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-2b (g) (3) (same); for which she is due reimbursement from the defendant. In other words, given the absence of any credible evidence regarding a purported loan or the plaintiff's personal payment of or continued liability for these medical expenses, the plaintiff failed to prove that these expenses *were not* "reimbursed in any other manner," i.e., although she demonstrated that the medical expenses were paid in full, she did not submit proof that she was obligated to repay her father or any other person or entity who did pay these expenses.

To be clear, had the plaintiff produced proof that she paid these expenses out of her personal funds or that she had taken out a loan or incurred debt to cover these expenses, either from her father or by other means, the defendant likely would have had an obligation to reimburse her for his 50 percent share. That simply was not the case here. The funds used for these medical procedures were, by her own admission, not her personal funds, and she failed to prove that the funds were loaned to her or that she was obligated to repay them. Therefore, without a demonstration by the plaintiff that she paid these medical bills directly or that she had incurred an obligation to repay her father or someone else, there has been no showing that these bills are "unreimbursed medical expenses" for which she is entitled to be "reimbursed" by the defendant.

Accordingly, we conclude that the court did not improperly add a condition to its prior order that the parties split equally the cost of unreimbursed medical expenses. Indeed, because the medical bills at issue here, in fact, were not shown to be "unreimbursed medical expenses," *neither* party was responsible for a 50 percent share of that expense. Surely, it would be illogical to order the defendant to "reimburse" the plaintiff for medical expenses that she never personally paid or for which she is not financially liable in any manner. To hold otherwise would give her a windfall; she would have no obligation to pay her 50 percent share of the medical expenses, and, at the same time, the defendant would be responsible to give to her his 50 percent share.[12]

Thus, under the particular circumstances of this case, rather than add an improper condition to the parties' agreement, the court simply gave the plaintiff an additional opportunity to demonstrate that these costs were

"unreimbursed medical expenses" by submitting proof that her father had loaned her the money and that she was obligated to repay it, thereby establishing that the medical expenses were not "reimbursed in any other manner."

As to the plaintiff's two remaining claims, we conclude that they are moot. The plaintiff failed to provide proof, on or before the court's January 31, 2014 deadline, to support her contention that she, in fact, had received a loan from her father to cover the son's medical expenses and that she was repaying that loan. As a result, the plaintiff has failed to prove that there were arrearages in the form of unreimbursed medical expenses that the defendant was required to repay to her.

"Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Wells Fargo Bank, NA* v. *Cornelius*, 131 Conn. App. 216, 219–20, 26 A.3d 700, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011).

The trial court rendered judgment on the plaintiff's motion for contempt on November 26, 2013, and, at that time, the court ordered that the plaintiff submit proof of the alleged loan and payments thereon by January 31, 2014. It is not disputed that the plaintiff failed to provide said proof by that date. In the period of time between November 26, 2013, and January 31, 2014, the plaintiff filed two motions with the court, both on December 12, 2013: (1) a motion to open the judgment and (2) a motion to reargue. The plaintiff, however, did not file any motion to stay the court's order that she submit proof of her alleged loan and payments thereon by January 31, 2014.

The court's order regarding the plaintiff providing proof of the alleged loan for the payment of her son's medical expenses was an order related to child support. Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-1 (6) ("'[c]hild support award' means entire payment obligation of the noncustodial parent . . . includ[ing] . . . health care coverage, child care contribution and periodic payments on arrearages"); see also footnote 7 of this opinion. As such, the time period within which she had to comply with that order—November 26, 2013, to January 31, 2014—was not automatically stayed by the filing of her motion to open. See Practice Book § 61-11 (c) (no automatic stay for orders of support in certain

family matters).

Thus, although the plaintiff's filing of a motion to open the judgment did extend her time to appeal the court's judgment; see Practice Book § 63-1; it did not stay the court's requirement that she provide her proof by the deadline imposed in the court's order. To toll that time period from running, the plaintiff needed to have filed a motion to stay the court's order. See Practice Book §§ 61-11 (c) and 61-12. Her failure to move for a stay of the court's order regarding her time to submit proof of her alleged loan and payments thereon, in conjunction with or in addition to the filing of the motion to open, means that the time for her to show proof of the loan continued to run from the date of judgment until January 31, 2014. As a result, her failure to provide proof by that deadline means that she has failed to prove that there were arrearages in the form of unreimbursed medical expenses, which the defendant owed to her.

Accordingly, the court's order regarding the amount of the defendant's payment toward unreimbursed medical expenses is moot, as is the question regarding how much the defendant could afford to pay, which was the ultimate issue raised in the motion to open.

The appeal is dismissed as to the plaintiff's claims regarding the amount that the defendant was required to pay and regarding the propriety of the court's denial of the plaintiff's motion to open the judgment; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff is now known as Lauren Geib.

[2] The defendant did not file an appellate brief in this matter, and, although his attorney attended oral argument and requested that she be permitted to argue, we denied her request. See Practice Book § 70-4 ("[n]o argument shall be allowed any party who has not filed a brief or who has not joined in the brief of another party").

[3] In the "conclusion and relief requested" section of her brief, the plaintiff requests in part that we remand this matter with direction to the trial court to find the defendant in contempt. We note that she has not briefed a claim challenging the court's finding that the defendant was not in contempt.

[4] The plaintiff's failure to submit the required proof by the date specified in the court's judgment renders moot her second and third claims on appeal. Specifically, any claim of error regarding the monthly amount that the court conditionally ordered the defendant to pay is moot because the plaintiff failed to provide the required proof in accordance with the court's order giving her additional time, and, therefore, the defendant was never required to make those monthly payments. Likewise, the issue raised by the plaintiff in her motion to open the judgment, namely, that the defendant had the ability to pay more toward the medical expenses, is moot because the plaintiff failed to provide the required proof by the court's deadline; therefore, the defendant did not owe anything.

[5] There are no claims relating to medical expenses for the daughter, who had reached the age of majority by the times relevant to the issues in this appeal.

[6] The record contains a letter from Rosenthal Eye Surgery that states in part that Kenneth J. Rosenthal, a surgeon, "performed combined cataract extraction with insertion of the iris prosthesis sequentially for both eyes, the right on January 13, 2013, and the left on June 9, 2013." The dates in this letter appear to be a clerical error.

[7] There is no transcript from June 18, 2012, in the court record, and we are unable to ascertain whether there was a hearing or whether the plaintiff

was in court on that day. We are aware that during the trial on the plaintiff's motion for contempt, when asked about her failure to tell the court that she thought there was an arrearage when the court ruled on the defendant's May 18, 2012 motion to modify, she stated: "There was no argument on my part. I did not even have to come to court that day or spend money on an attorney to be here. The child had reached the age [of eighteen], he graduated high school, [and] support ended; that was it." We note, however, that " '[c]hild support award' means the entire payment obligation of the noncustodial parent, as determined under the child support and arrearage guidelines, and includes current support payments, health care coverage, child care contribution and periodic payments on arrearages." Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-1 (6).

[8] Although we are troubled by the plaintiff's failure to alert the court that she believed that there were arrearages in the form of unreimbursed medical expenses on or before it rendered its June 18, 2012 judgment granting the defendant's motion for modification by terminating his child support obligation, the defendant, in the present case, did not claim that this amounted to a waiver of her right to pursue the alleged arrearages.

[9] The court issued a ruling from the bench, as well as a written order, followed by an articulation.

[10] The court stated that the plaintiff had listed this as a loan on her financial affidavit, but had submitted no promissory note or other documentation supporting this allegation, and she did not call her father to testify at the hearing. We note that the plaintiff has submitted a copy of the defendant's financial affidavit in her appendix but has not included a copy of her own affidavit. We further note that, although both affidavits are listed on the trial court's docket sheet, we have been unable to locate either of them in the court file or in the exhibit folder. Because the plaintiff's financial affidavit is not necessary for our consideration of the issues on appeal, we have not ordered the record rectified.

[11] The defendant's attorney offered the newspaper article into evidence, but the plaintiff objected, and the court sustained the objection.

[12] Our decision today should not be construed as holding that a medical expense should be deemed "reimbursed in any other manner" anytime a person uses personal gift money to pay that medical expense. In other words, if the plaintiff had established that her father simply had given her a gift of $50,000, untethered to her son's medical expenses, and that the plaintiff then chose to use those funds to pay the medical expenses, then that gift would not be considered a reimbursement of medical expenses. Rather, the plaintiff simply would have been using her personal funds to pay the expenses. In this case, however, the plaintiff had not established that she had paid these medical expenses from her personal funds, whether acquired by gift, by loan, by winnings, or by any other form of acquisition, despite being given the opportunity to do so. In fact, she admitted that she had not paid the expenses with her personal funds. Accordingly, because the plaintiff admitted that her father provided funds specifically for the payment of the son's medical expenses, and because she failed to establish that she had any liability to repay those funds to her father, the medical expenses then became expenses that had been "reimbursed in any other manner." See Regs., Conn. State Agencies (Rev. to 2005) § 46b-215a-1 (12).